## VICKSBURG, SHREVEPORT AND PACIFIC RAIL-ROAD COMPANY *v.* SMITH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF LOUISIANA.

No. 276.   Submitted April 11, 1890.—Decided April 21, 1890.

A suit was brought to recover from T. possession of a tract of land of about 35 acres, part of a larger tract of 186 acres, which the plaintiff, claimed to own.   The lessor of T. of the 35 acres was made defendant, and answered, claiming to own the land sued for and also the rest of the 186 acres.   The plaintiff recovered a judgment for the 35 acres, their value not exceeding $2000.   The value of the 186 acres was about $10,000.   The lessor having brought the case to this court by a writ of error, it was dismissed, on the ground that the amount involved was not sufficient to give this court jurisdiction, because it did not exceed $5000, exclusive of costs.

THE case is stated in the opinion

*Mr. Edward Colston* and *Mr. Frank P. Stubbs* for plaintiffs in error.

*Mr. A. H. Leonard* for defendants in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Circuit Court of the United States for the Western District of Louisiana, by

Robert N. Smith, Elizabeth A. Smith (wife of Marine Duval, joined, authorized and assisted by her husband), William L. Smith, Elizabeth W. Smith, (widow of James F. Smith,) citizens of Kentucky, and John S. Smith, a citizen of Colorado, as legal heirs of William W. Smith, deceased, against George A. Turner, a citizen of Louisiana.

The petition avers that the State of Louisiana, on the 14th of May, 1853, sold to William W. Smith a certain tract of land known as Silver Lake, situated in section 31, township 18, ranges 13 and 14, in the parish of Caddo, in the State of Louisiana, containing an area of 186.57 acres, at the maximum price of $1.25 per acre, which at the same time was paid into the treasury of the State by said Smith; that, after that sale, and on the 24th of February, 1855, the State issued a patent for said tract of land to Smith; that it acquired said tract as swamp and overflowed land, granted to it by the acts of Congress of 1849 and 1850, and sold the land to Smith as swamp and overflowed land; that all sales of land in Louisiana, claimed by the State as swamp and overflowed lands, whether made by the United States or by the State, and whether the land sold was of that character or not, were confirmed by the act of Congress of March 2, 1855, entitled "An act for the relief of purchasers and locators of swamp and overflowed lands;" that the act of 1855 was extended to sales made after its passage, and was continued in force, by the act of March 3, 1857, to confirm all selections of swamp and overflowed lands by the several States under the acts of 1849 and 1850; that the act of 1855 confirmed the title of Smith to the tract of land known as Silver Lake, whether it belonged to the State under the swamp-land acts of Congress, or whether it belonged to the United States; that Smith acquired a title to the land both from the State and the United States, by purchase and by confirmation by act of Congress; that that title is paramount to all subsequent claims from the government, and is indefeasible under the act of confirmation of March 2, 1855; that the plaintiffs are the owners of the tract of land known as Silver Lake, which is illegally withheld from them, and a part of it, containing 40 acres or more, is

in the possession of George A. Turner, a citizen of Louisiana, who refuses to deliver to the plaintiffs that part of the land; and that the part in possession of Turner is worth at least $600. The prayer of the petition is for a citation to Turner, and for judgment for the recovery of said tract of land in his possession, with its revenues, from judicial demand.

Turner was served with a citation, and put in an answer alleging that he was in the possession of a portion of the property described in the petition, as a tenant of the Vicksburg, Shreveport and Pacific Railroad Company, and praying that his said lessor and the owner of the property be made defendant, and he be discharged. An order was made by the court that the company be made a defendant in his place, and a citation was issued to it, with which its president was duly served. It was a Louisiana corporation.

The company first filed an exception to the capacity of the plaintiffs to sue, on the ground that they were not the legal heirs of Smith, and if they were, were not his sole heirs. This exception was tried and overruled. A plea and exception of *res adjudicata* to the suit was then filed by the company, on the ground that, in a suit entitled " *The State of Louisiana* v. *W. W. Smith*," in the District Court of Caddo Parish, Smith put at issue the validity and legality of his title to the land described in the plaintiffs' petition under the certificate and patent described therein; that, upon a final hearing, judgment was rendered in that suit decreeing said certificate and patent null and void, and that they be cancelled and delivered to the State of Louisiana; and that the plaintiffs, the heirs of Smith, were bound by the judgment in that suit.

The company also put in an answer to the petition, denying its allegations, and alleging that the sale or entry of the land, as set forth in the petition, was cancelled by the register of the state land office, on the 10th of June, 1853, and the cancellation was duly notified to Smith; that the sale, entry and patent were without authority of law, for reasons set forth in the answer; that the land was never selected by the State of Louisiana as swamp and overflowed lands, and never reported to the Commissioner of the General Land Office, and never

approved as such by the Surveyor General, the Secretary of the Interior, or the Commissioner of the General Land Office, and never listed or returned by the Secretary of the Interior to the State as swamp and overflowed lands; that the State had never claimed or acquired the land as such; that the land did not belong to that class of lands, but to the other class, known or designated as "shallow lakes," and therefore was not embraced in the grant from the United States of swamp and overflowed lands, under the acts of Congress of 1849 and 1850; that the company was the owner of the land, by grant from the United States to the State, under the act of Congress of June 3, 1856, to aid in the construction of railroads in the State, and which was accepted by the State for that purpose; that, all the requirements of said grant having been complied with by the State and by the Vicksburg, Shreveport and Texas Railroad Company, the land described in the petition, being embraced in that grant, was acquired by that company, and duly certified or patented by the United States as belonging to that company, and had been legally sold or transferred by it to the defendant company; and that the land described in the petition and sought to be recovered in the suit was worth at least $10,000. The answer prayed that the plaintiffs' demand be rejected, and for judgment decreeing the company "to be the owner of said land and quieted in possession thereof, and for general relief."

The case was tried by a jury, which rendered the following verdict: "We, the jury, find for plaintiffs, and that the land sued for is described in the plat made by W. R. Devoe and filed in evidence." A motion for a new trial was made and overruled, and a judgment was entered against Turner and the company, adjudging that the plaintiffs were the owners of the land in controversy, and entitled to its possession, the land "being known and described as follows," and then giving a description of it by courses and distances, "containing thirty-five $\frac{18}{100}$ acres, situated in the parish of Caddo, Louisiana, and as shown and described on map and survey of same made by W. R. Devoe, civil engineer, on file and of record in said cause." The judgment also ordered that writs

of possession issue in favor of the plaintiffs and against the defendants; that the plaintiffs have judgment against the defendants for costs; and that the plea of *res adjudicata* be overruled. The railroad company has brought a writ of error to review the judgment.

There are six bills of exceptions found in the record. One of them states that on the trial the company offered three persons as competent witnesses to prove that the land described and claimed by the plaintiffs in their petition, under a certificate and patent from the State of Louisiana, "and which is claimed by defendant under a grant from the United States government to the State of Louisiana to aid said railroad, and for which defendant prays judgment, recognizing their ownership, etc.," was worth $10,000; that the plaintiffs' counsel objected, on the ground that the only part of the Silver Lake tract of 186.57 acres that was in controversy in this suit was the part alleged to be in the possession of Turner, "and it was admitted by counsel for defendant that said part or parcel of land was not worth exceeding $2000." The bill of exceptions states that the objection of the plaintiffs was sustained by the court, on the ground that the petition claimed only the number of acres in the possession of Turner; that the judgment in this case, if for the plaintiffs, could affect only the land held by him; and that the claim set up by him or by the railroad company did not make this a suit for more than the number of acres of land claimed by the plaintiffs, "which is about forty acres, more or less, and is shown by admission of counsel not to be worth more than two thousand dollars."

The plaintiffs move to dismiss the writ of error, on the ground that the matter in dispute does not exceed the sum of $5000, exclusive of costs. The railroad company contends that the plaintiffs, by their petition, claim to be the owners of the entire Silver Lake tract of 186.57 acres; that the company, by its answer, also claims title to the entire tract; that it is stated by the court, in one of the bills of exceptions, that, if the suit involves title to the 186.57 acres, the land "is worth about $10,000, as is admitted by counsel for plaintiffs;" and that, therefore, this court has jurisdiction of the writ of error.

But we are of opinion that this court is without jurisdiction of the case. All that the plaintiffs, in their petition, claimed to recover was the part of the land which was in the possession of Turner, alleged therein to contain 40 acres or more. The answer alleged that the land sought to be recovered in the suit was worth at least $10,000, and prayed that the plaintiffs' demand be rejected, and for judgment decreeing the company "to be the owner of said land." This put in issue only the land in the possession of Turner. The judgment is limited to a piece of land described by metes and bounds, and containing $35\frac{18}{100}$ acres, as shown by a map and survey of the same, on file and of record in the cause. The value of that parcel of land is shown clearly to be not over $2000, and this is conclusive as to our jurisdiction. *Elgin* v. *Marshall*, 106 U. S. 578, and cases there cited; *Opelika City* v. *Daniel*, 109 U. S. 108; *Bruce* v. *Manchester & Keene Railroad*, 117 U. S. 514; *Gibson* v. *Shufeldt*, 122 U. S. 24.

*Writ of error dismissed.*